## CONE v. EMPIRE PLAID MILLS.

(Supreme Court, Appellate Division, First Department. December 11, 1896.)

CORPORATIONS—CONTRACT BY TREASURER—WHEN BOUND.

A corporation is bound by a written contract made through its treasurer to deliver goods, though its by-laws provide that the president shall sign all contracts by which a greater liability than $200 is assumed, where the treasurer has charge of the financial and manufacturing department, bought raw material, and sold completed fabrics, received and paid out money, and made other contracts which were complied with by the corporation, knowing which plaintiff paid on the contract $2,000, which the corporation retained.

Appeal from trial term, New York county.

Action by Moses H. Cone against the Empire Plaid Mills for damages for breach of contract. A judgment was entered on a verdict in favor of plaintiff, and defendant appeals. Affirmed.

Argued before BARRETT, RUMSEY, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

William E. Wyatt, for appellant.
Samuel Untermyer, for respondent.

INGRAHAM, J. The complaint alleges that on the 17th day of November, 1892, the Cone Export & Commission Company entered into a contract with the defendant by which the latter sold and agreed to deliver to the said Cone Export & Commission Company certain goods manufactured by the defendant, at prices agreed upon, and that the said Cone Export & Commission Company paid on account of the purchase price of said goods the sum of $2,000, which was received and retained by the defendant, and still remains in its possession; that the said defendant has refused to deliver the goods sold by it, though such delivery was demanded; and that the said Cone Export Company sustained damage to the amount of $5,955.61, which claim was assigned to the plaintiff, and for which the plaintiff asks judgment. The plaintiff proved on the trial a sale of the goods described in the complaint by the defendant to the plaintiff's assignor, the negotiations having been between the agent of the plaintiff's assignor and a Mr. Field, who was the treasurer of the defendant corporation, its general manager, and who had general charge of its business at its mill; a contract in writing executed by Mr. Field on behalf of the defendant; the payment by plaintiff's assignor to the defendant of the sum of $2,000 on account of the goods purchased; its receipt by the defendant corporation; and the fact that the money was actually used by the corporation for its own purposes. The defense to the action was that Field

had no power to make this contract. It appeared that Field resided at the place where the defendant corporation had its business, generally managed its business, made sales for the corporation of its manufactured goods, and purchased the raw materials used in such manufacture, had charge of the bank account of the corporation, and drew all checks drawn by the corporation. The other two stockholders and directors of the corporation did not reside at High Point, N. C., where the business of the corporation was carried on, took no part in the general management of its works, and did not make either purchases for it or sales on its account. The evidence of the defendant conclusively shows that all sales of manufactured goods made at the mills were made by Field; that he fixed the price of the goods and terms of sale; and that he did the corresponding, and generally had charge of the defendant's business; and that his authority to make sales of the defendant's goods had never been questioned. Plaintiff testified that he had known of many sales made by Field as an officer of the corporation, which had been complied with by the corporation.

The defendant, to sustain the defense, introduced a by-law of the company, which provides that the president shall sign all contracts by which a greater liability than $200 is assumed or undertaken; and a section of the Code of North Carolina, which provides that "every contract of every corporation by which a liability may be incurred by the company exceeding one hundred dollars shall be in writing, and either under the common seal of the corporation or signed by some officer of the company authorized thereto." The by-law of the company does not stand in the way of a recovery by the plaintiff in this action. It is conceded that Field had the general management of the company, and had made all of its sales. He was the owner of two-thirds of the stock of the company, and the only officer who lived at the place where the mills were situated, or who attempted to attend to the business affairs of the corporation. The corporation had certainly clothed him with apparent, if not actual, authority to sell its goods; and the sale of these goods to the plaintiff's assignor was a valid sale, and binding upon the defendant, without the written contract. Irrespective, therefore, of the power of Field to execute on behalf of the defendant this writing called a "contract," Field had power to sell the goods of the corporation for the corporation, exercised that power by making the sale in question, and received from the plaintiff's assignor a portion of the consideration. Having the power to make the sale, and to receive the consideration therefor, the fact that he executed, on behalf of the corporation, the written acknowledgment of the contract which he made on its behalf, certainly did not tend to invalidate the sale which he had actually made, a part of the consideration therefor having been actually received; but, if the contract in writing was necessary to bind the defendant, we think that Field's authority was, at least, a question for the jury. It is undisputed that Field was treasurer of the company, having sole management of its factory, making its sales and purchases, and appearing to the public as its sole representative. He had made many sales prior

to this time as an agent of the company, none of which had ever been repudiated. There was no apparent limitation upon his power to make contracts for the sale of the company's manufactured goods; and when he, as an officer of the company, acting within the scope of the apparent authority conferred upon him to sell the company's goods, made a contract of sale, reducing it to writing, upon which he received a part of the consideration for the use of the company, he certainly was acting within the scope of the apparent authority conferred upon him. Having actual authority to make the sale, there was nothing to show that he had not the authority also to sign the contract evidencing the sale which he had made. He was thus clearly acting within the scope of the apparent authority conferred upon him by the corporation; and any one acting in good faith, and without notice of any limitation on his authority, was entitled to rely upon the apparent authority thus given to the agent as the actual authority under which he acted.

We think it clear that, upon the verdict of the jury, the defendant was bound by his contract to sell the goods therein mentioned, made by Field, on behalf of the company. Whether or not Field was authorized to insert in the contract the other clauses restricting the right of the defendant to sell to other persons is not material, as no attempt was made to enforce this covenant in this action, and no damages were allowed for a breach thereof. There is, however, in the by-laws introduced in evidence on behalf of the defendant, which it is claimed limited the power of Field to act for the company, no provision limiting Field's power. It is true, the president is to sign all contracts of the company; but the secretary and treasurer is made superintendent of the company's business and affairs, and given supervision of its work and transactions. There is no provision that a contract signed by other officers than the president should be void, or not binding upon the company. The president is given authority to sign contracts for the company, and the secretary is made superintendent of the company's business, and given supervision of its work and transactions. He would thus be clothed with authority to make all contracts necessary in superintending and supervising the company's business and transactions; and, as this work in question was clearly a contract in the ordinary course of the company's business of manufacturing and selling merchandise, it would seem to be within the express scope of the treasurer's authority. The acts of the defendant after the sale in question clearly show that Field's authority to make this contract was not at all disputed, but that its subsequent repudiation by the corporation was an afterthought, when it appeared that the contract was an unfortunate one, and that the corporation could make more money by selling the goods elsewhere.

A question was presented as to whether or not the contract was an absolute one, or subject to the approval of the president of the corporation. That question was submitted to the jury, who have found against the defendant, and that question of fact is therefore settled. We think that the verdict was sustained by the evidence; that, Field having authority to make the contract, the verdict has

settled the question of fact as to whether he made such a contract; and, that fact being settled, the plaintiff was clearly entitled to recover.

It is not disputed but that the verdict was only for the difference in the market value of the goods at the time when they should have been delivered and the contract price.

The provisions of the North Carolina Code did not apply, because it was found by the jury that Field had authority to make the contract.

We have examined the exceptions to the charge, and think none of them well taken. The evidence is uncontradicted that neither of the officers of the corporation, except Field, took any active part in the management or conduct of the business of the corporation. Some objections were also taken to the admission of evidence, but they are clearly frivolous, and do not require notice.

There is here presented a common case, where a corporation, having made a contract which subsequent events show is an unprofitable one, endeavors to evade the responsibility that it assumed, by claiming that its officers authorized to conduct its business, whose authority had always been unquestioned, had no authority to make this particular contract, because the corporation does not wish to carry it into effect. We think the contract was fairly made; that it was made by an officer fully authorized to make it; that it was binding upon the defendant; and that the verdict is not at all excessive, but simply enforces the obligation that the defendant has assumed, and which it undertook to perform.

The judgment was therefore clearly right, and should be affirmed, with costs. All concur.